16-3230 Midwest Medical Records Association, Inc. v. Wilkie Brown All right. Could the attorneys on Midwest please approach the podium? Identify yourselves for the record. Just for Midwest or for both? For everybody. Whoever our appellant is. Hi. My name is Jason Gold. I'm a lawyer for the appellant, Midwest Medical. Your Honor, it's good morning. Paul Castigliano and I'm the appellant. Mr. Zolna, did you want to reserve time for rebundal? Yes. Three minutes, please. Okay. All right. Thank you, gentlemen. Mr. Zolna, you can proceed. Thank you. For years, the court of court denied litigants in Cook County access to the courts unless they paid a blatantly illegal fee. In fact, the illegality of that fee is no longer even in dispute. Did Judge Hall's opinion come out after Gassman was issued? Her opinion came out before Gassman, but she never reached the issue because it was dismissed on different grounds. Okay. So having now been caught charging this illegal fine, the defendant's position is that they get to keep all of this illegally gotten money because the litigants supposedly paid it voluntarily. That position is not only unsupported by the law, but it ignores the reality of our profession. To be clear, the clerk of court refused to accept filings unless that fee was paid. So absent payment, lawyers and litigants in this county would have been prevented from doing their jobs, fulfilling their ethical obligations, and protecting their legal rights. Could you plead that? Yes. In the Second Amendment complaint? Correct. Yes. Okay. There should be no dispute that the denial of something so fundamental as having your voice heard in a court of law would render payment of the unlawful fee compulsory and thus accepting it from the voluntary payment doctrine. The circuit court here nonetheless dismissed our case on voluntary payment grounds, reasoning that nonpayment would not result in a loss of access to, quote, essential goods or services. That was an error. As shown in the cases cited in our briefs, showing that a product or service is a necessity. Well, the trial court relied on Wexler v. Wurtz. Is that correct? Correct. Okay. So how would you distinguish that case? Wexler v. Wurtz, if I recall correctly, is the alcohol tax case. And in that case, they said they looked at what the consequence was if the person decided not to pay the tax. And the consequence is they don't get their sixth pack of beer. And in that case, the court said, look, you know, go somewhere else to buy or, you know, buy something else. You know, alcohol in and of itself is not a necessity. So they did use in that case the necessity exception to the voluntary payment doctrine. But as other courts have made clear, that's not the only way to show duress. If you read Judge Hall's decision, she seems to suggest that necessity is the only way to get around it, is the only way to show duress. We even outside of cases in our briefs, the Raintree Homes and I believe there are some others, that very clearly states that that is not the law in Illinois. You do not need to show necessity. That is only one way to show duress, not the only way. It was an error, therefore, for the circuit court to find that there had to be a necessity. Are you pointing to duress as the fact that if you didn't get this access, you didn't file a motion, you didn't do whatever you needed to do to get this back in court, that you could be on the hook for a malpractice claim or for whatever else you needed to do? Is that what you're pointing to? There could be all sorts of adverse consequences. I mean, I'm here today making arguments to this court. It's no different. If I was prevented from coming in here today to make my oral argument, I wouldn't be too happy about it. Win, lose, or draw, at least I got to make my case. So it's just the denial of having access to the courts. And yes, all sorts of horrible things could happen for doing that. You could be held into fault. You could have an adverse ruling against you. There could be, in this case, a ruling that you thought was erroneous that you wanted to go get fixed that you didn't have the opportunity to do. So is your argument focusing on the lack of access to the court? So if there were a decision that said that you still have a remedy of you don't get the motion reconsidered, but you still have a right to an appeal, how are you being denied access to the court? Well, it could be an interlocutory order. In fact, that's what all these decisions are. It only applies in interlocutory orders, so we don't have a right to appeal. Here we are in the trial court, and we get a decision that we disagree with, or maybe there was a point of law that was overlooked by the court, and we want to go in and have our case, our argument heard. Now, one could say, you know, well, the judge already made the decision on it, but we just want to present our case. Win, lose, or draw, it's up for the judge to decide whether that motion has merit. We just want the chance to make our case. And being denied that is really a denial of our constitutional rights. I mean, that is clear. We're denied access to a hearing. And what about payment under protest? That's something else Judge Hall talked about, right? I don't believe Judge Hall touched upon that. She may have. I know the defendants in their brief, you know, spent a lot of time pointing out the fact that there was not a payment made under protest. But, again, the case law is clear. In Illinois, we cite a number of cases in our briefs that specifically state paying under protest is irrelevant to the issue of duress, close protest, Ramirez v. Smart, and the Raytree Holmes case, both of which are cited in our briefs. So protest is a red herring because we don't need to show protest to show duress. Mr. Zomar, can I pull you into the private right of action? Where are you getting that there's a private right of action in this, in the clerk of the court, sorry? Well, the big dispute on that issue is whether the act was designed to protect the litigant or was it designed to protect the county so they could collect these fees. And I know the city cited the Marshall case, I believe it was called, that had some language in there that suggested that it was passed for the benefit of the counties to fund their various needs, et cetera. And that may be true in terms of how that money is spent. That was a taxpayer case. But in terms of the limits on the amounts that were placed on certain fees, that clearly was designed to protect litigants. They don't want this clerk of court charging a $500 filing fee just to get into small claims court. So in terms of that aspect of the Clerk of Courts Act, the limits and the amounts that can be charged and the different types of things that can be charged... I agree with you. But the Clerk of the Courts Act is very, very specific on what exactly she can charge for whatever action they're seeking. I agree with that. However, I'm not seeing where you are getting attorney's fees and costs in that cause of action. I agree with you that you, she clearly violated the statute. A gasman agrees with you. That's not in dispute. But where are we getting that you have the right to get a class action, get attorney's fees, and get all court filing fees? I believe costs are always assessed against or in favor of the prevailing party. So in terms of the costs expended, that would be something... What about attorney's fees? Well, attorney's fees, that's just common law. If you create a fund for the class that you're entitled to attorney's fees out of that fund. Why are you precluded from getting a restitution claim? Well, we believe there is, in this case, an unjust enrichment claim for refunds of the amounts paid. There is a nuance in terms of what constitutes restitution versus what constitutes damages. Wouldn't that be for the trial court to determine? Whether it's restitution or damages? Right. But if the restitution, if it goes back to the trial court, and the trial court has the benefit of having everything in front of them, okay, this was the wrongfully obtained fee. That one's an easy one. And then what other costs are associated with it? To put the parties, if we're going to say restitution is to put the parties back where they would have been without that wrongfully assessed fee. Yes, but if you look at it in terms of the restitution claim, there's different elements we have to prove than a damage claim. And I think it's pretty clear, at least our position is pretty clear, that we have a valid restitution claim. But if for some reason the court believes that, or a jury for that matter, finds that we didn't prove one of those elements, we still have a damage claim under an implied cause of action. But I think the question is, what other damages were sustained by your clients? For example, did any of your clients refuse to pay the fee, and were they denied the opportunity to file something? All of them. No. No, they paid the fee. All of your clients paid the fee. Correct. One of the things you want is a refund of the money. What else besides attorney's fees and costs are just the cost of litigating the case? But damages other than the refund, what other damages did they suffer? Well, ultimately damages in all likelihood will equal the refund, the amounts paid. That's how much they were, in that case, damaged, whatever amounts came out of their pocket. Okay. That's where I was going. Okay. And you're saying that, you know, I've been trying to read through your second amendment complaint while we've been talking, but you're saying that you pleaded in here that they refused to accept filing fees, that they refused to accept interlocutor fees. I'll represent that we did during opposing counsel to try to pull up some of the things. But it is alleged in the complaint that I think generally, and then also specifically for each plaintiff, that they refused filings unless the fee was paid. And in reality, that's what happened anyway. That's undisputed. So Judge Hall said she wrote an opinion the first time she dismissed it, right, but not the second time? She wrote a judgment order? I believe she wrote an order that just adopted her prior statement. Basically adopted the voluntary. Right. So with regard to the first amendment complaint, she said, plaintiff's allegations of duress are conclusory and do not contain sufficient facts. So that's a little bit different of an issue before. It seems to me there could be two different things here. One could be we all know what facts you're pleading, we all understand, and the question is, as a matter of law, is that or is that not a voluntary payment? There's another question of, well, did you plead it? If you didn't plead it and she dismissed it, we wouldn't necessarily reach the legal question, right? We might just ask, well, did you even say this in your complaint? Correct. And I can assure you that through the complaint, there are several allegations dealing with, I mean, really, there's not a whole lot of facts you need to allege here. The fact is we walked over to court to file something. The clerk of court told us we couldn't file it unless we paid the $60. We had no choice, so we paid it. Had we not paid it, we would have not had our hearing on whatever motion it was that we filed, and we would not have been able to present our arguments to the court. I mean, that's a really summary fashion of what it is, but really what more is there to allege on this issue? Okay, so we talked about Marshall a little bit, but Marshall is a very different animal, isn't it? In Marshall, there's an appropriate fee, correct? Correct. Okay, and the parties just had a beef with how Dorothy Brown was spending that fee, that it wasn't going to what categories that was on the form, you know, a filing fee or a storage fee or whatever it was. And so Marshall says, well, you don't even have any standing to complain about that. Is that correct? In that case, that's correct. So Marshall kind of cuts against you, doesn't it? Not with a voluntary payment. Correct. Exactly. It does only in fact, and so is if we were to bring a claim of how the money was spent. Our claim differs in that it, you know. She never had the right to take it. In that case, it was really what was the taxpayer's damage, right? They're not complaining that they were charged something illegal. They paid the fee and it was legal. They paid whatever it was, the $50. There's no complaint that they had to pay the $50 to do whatever they needed to do in the court. And in that circumstance, there was really no harm to that person. They're just complaining about what the clerk did with that money after the fact. Here, our case is a lot different because this fee was illegal. It was clearly illegal and the clerk of court was charging it. And people were damaged because they should not have had to pay it. We had to pay that fee in this case actually because we filed a motion to reconsider. So, I mean, we had no choice but to pay it. All right. So let's go to your private right of action as necessary because restitution is inadequate. Why is restitution inadequate? Because somebody's got to pay the attorney's fees and the $60 fee coming back to them is not going to adequately compensate them for what they spent to get it back? Well, that's one of the reasons. But I think the more important reason is that it's more if the restitution claim, and I don't think this is likely, but if the restitution claim was insufficient, then there should be some right of action to give aggrieved individuals redress under this. Because, again, the restitution claim … What do you mean by insufficient? What does that mean in this context? I mean, if you didn't … If we couldn't prove a restitution claim because the elements of a restitution claim, like on Justin Richmond, for example, you have to prove the elements of that cause of action to get relief. If that was unavailable to us because one of our elements is not provable or we couldn't prove our case, which I don't believe is the case, there should be some avenue of redress for this. I mean … But then what you're saying is whether or not there's a private right of action under a statute depends on how good the rest of your case is. If the rest of your case, for whatever reason, you can't sustain, well, then you get a private right of action. Well, at a minimum, I think, in the alternative, at a minimum, because if there was a decision from the Illinois Supreme Court that said, in this particular case, and I don't think this is likely, but in this particular case you cannot prove unjust enrichment because you can't prove one of those three elements, well, then how do these people get redress for some money that was taken from them? Well, I don't know, but whether there's a private right of action, either there is or there is not, right? I mean, it doesn't vary depending on … It doesn't go from case to case. Well, in this case, they had other causes of action, so there's no private right of action. But here, they didn't, so they get a private right. You either get one or you don't. Well, I believe that the issue … But you are missing something. I think the issue we're discussing here is, well, we already have a restitution claim, so there's an avenue of redress for … Oh, you're talking about the fourth quadrant? Yeah, I believe that's kind of what we're driving at here. Sure, sure. And my only point on that is, I mean, imagine if there was, five years ago, a similar case brought like this and went all the way up to the Illinois Supreme Court and the law of Illinois was that you can't bring an unjust enrichment, you can't prove element one in a case like this, and then we went ahead and filed this case. Part of our argument would be, well, we don't have a restitution claim because the Supreme Court says we don't, but we should have an avenue of redress under a private right of action. But the availability of other claims doesn't mean that those other claims would win. It just means that you have other – like you have restitution, it seems like, to go after in this case. It doesn't – whether under your particular facts you can win it, who knows? But isn't that what they mean when they talk about other availability? Like there's other causes of action that you could assert, not a guarantee that you'll successfully assert them. Again, I think when you – it's really – we're looking at this as an alternative that if that claim wasn't available – I mean, you could – I could have added a breach of contract claim in here if I wanted to. It may not have worked. It probably wouldn't have. But that doesn't mean that there's another available avenue for me. I'm just making up a claim. No, I understand. I understand. I'm talking about viable claims that we can get redress for what happened here. I think if there's no other questions, the only other point I'd like to make is we do cite a number of cases in our brief – I won't go over them – that deal with all sorts of things that I think are much less – much more inconsequential than what we have here. Denial of access to the court, that's the bedrock of our justice system. And again, it's not whether we could actually win on this or what the issue was before the court, but it's just the opportunity. And being deprived of that opportunity is really what's at issue here. I mean, if this court affirms the circuit court decision, you know, I'll have to live with that. But if this court didn't allow me to come in here today and present my arguments, then that would be a bigger problem. So that's really what's at issue in this suit. And that's, I think, all I have. Thank you. Thank you, Mr. Zolno. Mr. Castigliano. Your Honor, good morning. I see a connective tissue between the two issues here, which is, one, the application of the voluntary payment doctrine and whether or not an implied right of action exists. And the connective tissue is this. Plaintiffs are essentially asking this court to fill gaps or create either a claim or a negated defense that the legislature could have but did not do. Mr. Castigliano, I'd like to call this case the scorn of Gassman. So Gassman clearly says you cannot take this fee. And granted, the trial court didn't have the benefit of Gassman at the time, right? Yes. So we're all in agreement that Gassman applies. The fee was incorrectly assessed. No doubt. We do not dispute Gassman's law. Okay. We concede that. Do you agree that the assertion by Dorothy Brown's office that they had to pay this fee in order to get access to court was incorrect? We believe that the fee should not have been charged. Okay. So then what difference does it make whether they paid that fee voluntarily or involuntarily? Well, because voluntary payment doctrine is a common law defense. A money paid, in this case, to the government wrongfully is not recoverable in light of that common law defense unless it was paid under protest. To answer Justice Ellis' question, but that's another thing not in dispute. Then plaintiffs are not saying that they pled involuntary payment. Could they have? Sure. We know from Ross v. City of Geneva all you have to do on the check you pay is write in the memorandum section under protest. So clearly the fee shouldn't have been charged. But clear justice clearly under the voluntary payment doctrine is not recoverable absent payment under protest or proper allegation of duress. The problem is plaintiff's definition of duress here is so broad that the exception will swallow the rule. What they're really asking you is to negate and make the voluntary payment doctrine just kind of wash it away here. Well, at the core of this is you don't get access to the court with regard to these interlocutory orders unless you pay the fee. How is that not duress or compulsion or whatever term you want to put on that? That's a pretty stiff penalty, is it not? It does seem like strong lesson. It's true. There is one case that plaintiffs cited in the trial court and came up in some of the cases they cited, Raintree Homes, I believe. No, no, I'm sorry. The unpublished case Keating discussed Norton v. City of Chicago. And that's really the one case that really squarely deals with this issue. When is it duress for the government to take steps that would deny access to the courts? And the facts in Norton go far beyond what's alleged here. All we have here is Dorothy Brown saying, I believe that the statutory regime scheme set up here in Section 27.3 applies not only to motions to reconsider final judgments but also interlocutory orders. It turns out that's wrong. This court held no and gasped when that's not the case. And you think when people show up to court to file something, they send one of their clerks usually, right? The courier will go over with a bunch of stuff to file, right? One after the other after the other. And the clerk says, that will be $60 for that one. You think that the party, broadly thought of, the party, the lawyer, the people who work for the lawyer, have sufficient knowledge at that moment that, hey, that's wrong. This is an interlocutory order. I'm not supposed to be charged that, so I'm going to write under protest on my check. It's an objection-driven system. I think that's what's in objection-driven. Well, sure. I mean, in the sense that if someone wants to pay under protest, the burden is on them to say, like in Wexler, the issue there was, I believe, I'm trying to remember in Wexler, I don't think they paid under protest, but they could have. And ultimately, the court said that's not a necessity, not an exception to the law. Well, they were saying it wasn't an essential credit service. Right. Let's take that argument out now. Okay, so you don't file it, or the clerk won't accept your filing without the fee. Right. Could not, one, that person's right to have an incorrect order corrected be negated? Couldn't the attorney be subject to a malpractice claim for not filing that? So how is that not an essential good or service? Well, again, I don't dispute that the fee was charged wrongly. We all agree on that. Right, we all agree on that. We all agree on that. Yeah. But the, I mean, but it's not, it's different than Norton, where the, in that case, and Data Com, its agent, was telling people who've been charged with parking tickets, don't show up. If you do, fines might be greater. They were basically openly discouraging people to assert their rights. There's nothing like that here. Dorothy Brown didn't do that. She simply charged a fee she thought was correct. And that's something wholly different. I agree that, you know, in terms of, the problem with Cronus' argument is if it would apply to, it would basically say voluntary payment doctrine is off the table with regard to any fee charged in litigation by the circuit clerk. And I just don't think that's right. I don't think, I think the legislature could do that. Let's go back to my original point. The legislature can always abrogate the common law voluntary payment doctrine. We cited the Supreme Court's case in Alvarez v. Pappas where they did exactly that. In Alvarez, the Supreme Court held voluntary payment doctrine applies to a claim for a refund of overpaid real estate taxes. Now, clearly, people pay real estate taxes because they're required to do so. What happens if they don't? They can lose their home. Clearly, that's as draconian or as problematic an outcome as not being able to file a motion to reconsider. I would argue a lot more problematic. Nonetheless, the Supreme Court says voluntary payment applies to that. Well, wouldn't that depend on the case, though, as well, Mr. Castiglione? I think you can agree with that. Some motions to reconsider could have serious ramifications. So we cannot say that just as a blanket rule, a tax case is more important than all of these motions to reconsider without knowing what the basis are. So we can agree to disagree on that point. But I would like to hear what you have to say about the implied private cause of action. Well, I think, okay, I'll do it. In Marshall, this court clearly held that the party for whose benefit the clerk of the courts act, this provision, was enacted. It was not litigants but the counties. These fee schedules basically are designed to raise revenue, to raise money, to offset the costs for the counties in operating the court system and, in particular, the clerk's office. So is your position that the implied cause of action does not, this is not a protected class person, litigants, it doesn't apply to litigants, it's only for Dorothy Brown's benefit? Not for Dorothy Brown's benefit, for the county's benefit, a county who's the one funding it. And I think, no, I don't think they meet any of the four elements of the test that Justice Ellis referred to. I think the county is the party for whom the fees were intended, were created to offset their costs. Plaintiff's injury is not one the statute was designed to prevent. Whose injury was it designed to prevent? If the statute specifically says this is your fee range and you cannot go off that, that's, you're limited to that, who's that designed to protect? It's not designed to protect the county, it's designed to protect the people who have to pay the fee. Again, going back to this Court's decision in Marshall, this Court clearly found that the purpose of the statute was to offset the county's costs. That's the primary. But in Marshall it was an appropriate fee. Now we're talking about collecting a fee that they're not entitled to. Isn't that warranting a slightly different analysis? I don't think so. I think, again, what the statute was designed to do is what that statute was designed to do. Whether we're talking about in the context of a claim to recover and a wrongfully charged fee or, in the case of Marshall, a mandamus claim regarding the expenditure by the county of those fees in terms of the operation of the clerk's office. The purpose of the statute is the purpose of the statute. And it was there as an offset. Would you agree that they're entitled to restitution claims? Don't dispute that. In fact, that's why they don't meet the fourth element of that task. Did the trial court in this case also dismiss the declaratory judgment actions, which would allow them to get a restitution claim? I'm sorry, the trial court did dismiss the claim because plaintiffs did not plead in voluntary payment and in the Court's view and the view we share, did not adequately. If they found that the voluntary payment doctrine doesn't apply in this case, would they be entitled to go back to the trial court and have their unjust enrichment and their declaratory judgment reinstated? Yes. But I don't think they'd get a claim for an implied right of action. Again, they're asking for something. Well, the implied right of action is a little bit of a horse of a different color, is it not? I don't think so. Then the restitution. Oh, sure, because what they're saying is in the implied right of action, they're looking for attorney's fees. Again, something the legislature has not given. Just to clarify this point, going back to Alvarez's argument, I realize it's a different argument, but I think it bears on both. In Alvarez, what the Supreme Court ultimately said, and the issue there was, plaintiffs wanted to be able to go back more than five years, which is what the property tax code allowed to pursue a claim for an overpayment. The court said no. Because of the voluntary payment, without the voluntary payment doctrine, you wouldn't be able to protest wrongful payment of your real estate taxes at all. The only reason you can, the only reason that doesn't bar it because you didn't pay under protest, is you have the statutory remedy under the property tax code. So you have to live within what the property tax code provides, which was you can go back five years. Kind of the same thing here in terms of the implied right of action. The common law cause of action here is one for restitution. That doesn't provide for attorney's fees. Plaintiffs, I think, are saying no, we want the implied right of action, not to have a full adequate remedy for the wrongful payment of fees, but rather to be able to have a claim for attorney's fees. Because without a statutory basis or a contractual basis, there is no basis for attorney's fees, absent agreement of the parties. So I think those are the two. I see a similar problem with both. The legislature could tomorrow pass a statute saying you want to challenge the wrongful charging of a fee. Here's your cause of action. Here's your attorney's fees. Voluntary payment's off the table. They can do that tomorrow. They haven't done that. And it comes down to the end. The plaintiffs are asking this court to fill that gap. The trial court, I think, rightfully followed the law as it sits. The legislature hasn't done so. They have not pledged a voluntary payment. And this is not the type of duress that you had in Norton, where you had the city and data camp actively discouraging the scofflaws, in that case, from coming forward to contest their claims. There was no active discouragement by Dorothy Brown. It was simply the clerk charging the fees she thought was proper. She incorrectly thought it was improper, but she did so in good faith and not to discourage litigants from coming to court. So if the court has no further questions, we'd ask that the decision of the trial court be affirmed. Thank you, Mr. Castagnino. Mr. Zoma? Thank you. Just addressing the allegation aspect, there are a number of allegations throughout the complaint. On the specific issue, paragraph 44 specifically states, the clerk of court's uniform policy is to not accept motions to reconsider, vacate, or modify interlocutory orders without payment of the filing fee. Here, in fact, the clerk of court refused to accept plaintiff's filings unless and until each paid the unlawful fee. That's paragraph 44. 44 is what I had just read. There are other paragraphs, really, 41 through 48. I'm sorry. I was looking at the wrong one. I was looking at your first amendment complaint. It's A0082 on the appendix. Okay. So in terms of the allegations, they're there. The allegations are there. In terms of just a few of the cases the defendant cited in Norton via the city of Chicago, there the court did apply the duress exception, and in that case it was because the parking ticket merely, and this is a quote, suggested that the defendant's access to the court system has been blocked, end quote. Here there was no suggestion. Access to the courts was blocked definitively, absent payment. And the Norton court went on to say we have found nothing in Illinois law that would allow a government to issue such notice and deny the defendant access to the courts. But that is precisely what happened here. And the fact that that threat came in the form of a written notice is of no moment because here when you walk over there, you're told. There's fee schedules. You're told. You cannot come in here unless you pay this fee. So whether that's in a written notice that's mailed to you or whether it's told you at the clerk's office when you're standing there with your client's filing, there's no difference. And just like in Norton, there is nothing in Illinois law that allows a clerk to charge such a fee and represent to people who come to that clerk's office that they have to pay that fee or they can't go to court. And if this case is reversed and goes back to the trial court, we're sure that this was not some innocent mistake, as the defendant suggests. We have fee schedules that were publicly available where the clerk of court actually moved the word final around so that they could charge this fee. So when it's publicly represented to people, when it's given to the employees in the clerk's office, that fee schedule says that it's a motion to vacate or modify or reconsider an order or a final judgment, not final order or judgment like the law said. So they knew exactly what they were doing. LBS, I'm not too worried about that case at all. The voluntary payment doctrine was mentioned in passing. No one talked about whether duress was involved. It was not an issue. It wasn't ruled upon. No one asked the court, if I lose my property or the threat of losing property, is that sufficient enough to get around the voluntary payment doctrine? That just wasn't in play. And there are plenty of cases that show, that have held since and before, that the threat of loss of real estate is, in fact, sufficient to show duress. All that was at issue in LBS was the interpretation of the statute as to whether the payment of real estate taxes fell within the Property Tax Act, which the court said it did, and therefore falls within that statute of limitations, and the claim was time-barred. Nothing to do with what's at issue here. I just want to reiterate, too, we don't know what these motions to reconsider were, and really that's irrelevant. Some of them may have been extremely important, some of them may have been a little bit more trivial, but that's not for us to decide or even this court to decide. That was for the judge over across the street to decide, whether it was valid, whether it had merit, and whether it was important. We're only talking about the opportunity, the opportunity to make that case, and that's what this case is about. And imagine if a deputy stood outside this courtroom every morning and refused to allow lawyers in unless they paid her $100. What would you do? What would any of us do in that situation? We might argue a little bit, we might fight a little bit with the deputy about it, some of us might make a scene, but if the bottom line policy was, you have to pay $100 or go home, every single one of us in this room would have paid that $100. Would that payment have been voluntary? If I filed suit the next day to get my money back from the deputy, would I be able to run? Well, that's what this case is all about, that's what this appeal is all about, and I think the answer is pretty clear when you look at it that way. That is the reality of the choice that litigants faced in this case. Because it's no different than the example I just gave to the deputy. We respectfully ask the court to fix what we truly believe is an erroneous application of law and reverse the circuit court's dismissal of the suit. Thank you. Thank you, Mr. Zolma. Excellent briefs, gentlemen, and very well argued. We will get a written order out as soon as possible. Thank you. Thank you.